UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

TEXTRON FINANCIAL CORP.        :
                              :
        v.                    :       C.A. No. 09-085S
                              :
OAKBORO TRACTOR &             :
EQUIPMENT, INC. and JOEL      :
THOMAS                        :

**MEMORANDUM AND ORDER**

This is one of nine (9) cases filed in this Court in February 2009 by Plaintiff Textron

Financial Corporation ("TFC") against out-of-state farm tractor dealers alleging that they, and

their guarantors, if applicable, were in default of their payment obligations under certain

inventory financing agreements known as Wholesale Security Agreements.[1]  Defendants in this

particular case are Oakboro Tractor & Equipment, Inc. of Oakboro, North Carolina as the alleged

defaulting entity, and its principal Mr. Joel Thomas of Peachland, North Carolina, as the

guarantor.

Defendants answered on April 6, 2009 and asserted a multi-count counterclaim against

TFC, pursuant to Fed. R. Civ. P. 13, alleging that TFC and Farmtrac, North America of Tarboro,

North Carolina, a farm tractor manufacturer, engaged in a conspiracy to "dump" tractor

inventory on its dealers such as Oakboro and thus effectively transferred debt from Farmtrac to

the dealers.  (Document No. 8).  Defendants contend that TFC also extended credit to Farmtrac

---

[1]  All of these cases have been administratively assigned to District Judge Smith based on a finding by the District Judges that they are related.  (Document No. 12).  The cases involve the same basic loan documents and almost all of them present the same basic counterclaims asserted by the borrowers.  Consolidating related cases before a single judge can bring efficiencies in areas such as pretrial discovery and rulings on legal issues common to such cases.

and benefitted from the inventory dumping because Farmtrac was in "financial distress" and could not repay its loans to TFC.  Id.  Farmtrac ceased operations in early 2008 and apparently is the subject of a receivership action in North Carolina.

On November 3, 2009,[2] Defendants moved to transfer venue to the Middle District of North Carolina at Winston-Salem pursuant to 28 U.S.C. § 1404(a) alleging that Rhode Island is an "exceptionally inconvenient" forum for several reasons.  (Document No. 14).  TFC opposes the Motion and contends that venue is proper in Rhode Island pursuant to enforceable forum selection clauses in the loan documents signed by Defendants.  (Document No. 15).  Defendants' Motion has been referred to me for determination pursuant to 28 U.S.C. § 636(b)(1)(A); LR Cv 72.  A hearing was held on January 28, 2010.  For the following reasons, Defendants' Motion is DENIED.

**Discussion**

The loan documents in question do not mandate venue in Rhode Island.  Both contain what are known as "permissive" forum selection clauses which provide a valid legal basis for TFC's initiation of this case in Rhode Island but do not provide for Rhode Island as the exclusive

---

[2] Defendants asserted forum non conveniens as an affirmative defense in their April 6, 2009 Answer.  During a June 1, 2009 Rule 16 Conference in two related cases with the same attorneys (C.A. Nos. 09-61 and 09-84), Defendants' counsel represented that a motion to transfer would be filed "within the next month."  To date, motions to transfer have not been filed in either of those cases, and TFC asserts that Defendants' seven-month delay in filing in this case makes their Motion untimely.  Although there is no time limit within which a motion to transfer venue must be filed, common sense dictates that such a motion should be filed with "reasonable promptness" after the defendant becomes aware of circumstances supporting a transfer motion.  See N2 Consulting, LLC v. Engineered Fastener Co., No. 3-02-CV-0308-BD, 2002 WL 31246770 at *2 (N.D. Tex. Oct. 2, 2002).  Here, Defendants were aware of the grounds for their venue motion from the outset but waited seven (7) months after answering and after one-half of the eight (8) month pretrial discovery period had lapsed before filing.  While this case is not on the eve of trial and the delay is not significant enough to be a dispositive factor, it is a relevant factor that weighs somewhat against Defendants' position in this close case.  See generally 17-111 Moore's Federal Practice – Civil § 111.17[2][a] ("a party seeking a change of venue should move with 'reasonable promptness' after the factors favoring a convenience transfer become evident...because a delay in moving to transfer, although not dispositive by itself, is properly among the variety of factors considered by the court as weighing against transfer").

-2-

venue.  See Autoridad de Energia Electronica de Puerto Rico v. Ericsson, Inc., 201 F.3d 15, 18-19 (1st Cir. 2000).  In particular, the Wholesale Security Agreement signed by Defendant Oakboro provides that "[e]ach of the parties hereto consents to the non-exclusive jurisdiction of Rhode Island courts in connection with the resolution of any disputes concerning the matters contemplated herein."  (Document No. 1-2).  Similarly, the Guaranty signed by Defendant Thomas provides that "Guarantor consents to the jurisdiction and venue of Rhode Island courts in connection with Textron's enforcement of any of Guarantor's obligations under this Guaranty."  (Document No. 1-3).  Both loan documents also contain Rhode Island choice of law provisions.

In Astro-Med, Inc. v. Nihon Kohden Am., Inc., Nos. 08-2334 and 2335, 2009 WL 3384786 at *8 (1st Cir. Oct. 22, 2009), the First Circuit recently instructed that a contractual forum selection clause is "a significant factor that figures centrally in the District Court's calculus" under Section 1404(a).  It also advised that "[n]ot only does the burden of proof rest with the party seeking to transfer; there is a 'strong presumption in favor of the plaintiff's choice of forum.'" Id. (quoting Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000)).  However, the First Circuit has not specifically opined on how much weight a permissive forum selection clause should be given in the Section 1404(a) calculus.  "While courts [generally] distinguish permissive and mandatory forum selection clauses, they disagree over the relative weight to which permissive forum selection clauses are entitled, when considering motions to transfer under § 1404(a)." Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V., C.A. No. 07-273 (JAG), 2007 WL 4365328 at *4 (D.N.J. Dec. 11, 2007).

-3-

This is not a case where there is a conflict between the presumption in favor of a plaintiff's choice of forum and the forum designated in a permissive forum selection clause because Plaintiff here chose to file suit in the contractually designated forum. See Atlas Oil Co. v. Micro-Design, Inc., Civil No. 2:08-CV-12467, 2009 WL 411763 (E.D. Mich. Feb. 17, 2009). Thus, it is a case where Defendants bear the burden of proving that this case should be transferred out of Rhode Island and, in determining if Defendants have done so, the Court must give TFC the benefit of both a strong presumption in favor of its choice of forum and some additional weight because the parties agreed to a permissive forum selection clause authorizing jurisdiction and venue in Rhode Island.

Although this transfer motion presents a close call, Defendants have not met their burden of establishing that the totality of the circumstances require transfer of this pending action to the Middle District of North Carolina.  Section 1404(a), 28 U.S.C. states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  In weighing whether a motion to change venue should be granted, the Court makes its determination based on a "case-by-case consideration of convenience and fairness."  See Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F. Supp. 2d 31, 38 (D.R.I. 2003) (citation omitted).  In addition to the convenience of the parties and witnesses, the Court should also consider the "availability of documents; the possibility of consolidation; and the order in which the district court obtained jurisdiction." Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000).  In weighing these interests, there is a strong presumption in favor of a plaintiff's choice of forum.  Id.

-4-

The parties argue vigorously for their preferred forum and each side naturally has a strong preference for its "home turf." Although TFC is headquartered in Rhode Island, it appears undisputed that the loan in dispute was issued and managed by TFC's Floorplan Finance Division located in Alpharetta, Georgia. See Document Nos. 1-2 at p. 3 and 1-3 at p. 3. Defendants are located in North Carolina and, coincidentally, the financed farm tractors they sold were manufactured in North Carolina. Defendants argue that they are not aware of even a single witness who resides in Rhode Island and that forcing them to try this case in Rhode Island will deprive them of the ability to compel live testimony from important third-party witnesses and thus effectively deprive them of their "day in court." In particular, Defendants argue that many of the witnesses they intend to use at trial to support their fraud counterclaims are former Farmtrac employees who reside in North Carolina and thus are not subject to compulsory process in Rhode Island.

TFC does not generally dispute Defendants' contentions as to the limited evidentiary nexus with this District. Rather, TFC contends that Defendants unreasonably delayed in filing this Motion and filed it for dilatory purposes. In addition, TFC relies heavily on the contractual forum selection clauses agreed to by Defendants and argues that such clauses are material terms in small business lending. TFC asserts that such clauses provide predictability and cost efficiencies by permitting it to pursue enforcement claims in a single forum rather than pursuing lawsuits in forums throughout the country wherever the defaulting borrowers might be found.

Defendants' argument places great weight on the inability to compel former Farmtrac employees (residing in North Carolina) to provide live trial testimony in Rhode Island to support

their fraud/inventory dumping counterclaims, and that such inability weighs heavily in favor of transfer.  Interestingly, however, the defendant in a related case, who is represented by the same attorneys, appears to have a different take on the same issue.  In support of their Motion, Defendants submit the sworn declaration of Mr. Alton Keith Freeman.  (Document No. 14-16).  Mr. Freeman is the principal of Freeman Tractor, a former Farmtrac dealership in Mississippi.  He is the defendant in <u>TFC v. Freeman</u>, C.A. No. 09-87S, which is a related case to this one and involves nearly identical claims and counterclaims including the fraud/inventory dumping counterclaims.  Unlike Defendants in this case, Mr. Freeman does not express any concern about his inability to compel live testimony from the former Farmtrac employees residing in North Carolina.

In fact, although Mr. Freeman asserts that "holding a trial in Rhode Island would unfairly limit [his] ability to defend [TFC's] claims and pursue [his] claims," he does not contend that his case should be transferred to North Carolina and argues that allowing trial to proceed in either Jackson or Hattiesburg, Mississippi where he is located will give him a "fair chance" to present his case.  <u>Id.</u>  However, his proposed forum in Mississippi is approximately the same distance (700 miles) from the Middle District of North Carolina as is this District.  In other words, even though Mr. Freeman presents the same counterclaims as Defendants in this case, he is apparently able to try those counterclaims against TFC in Mississippi without the benefit of compulsory process over the former Farmtrac employees while Defendants here claim that the absence of such process would deprive them of their "day in court."  If live testimony from the former

Farmtrac employees was as critical as claimed by Defendants, then Mr. Freeman presumably would also be seeking a transfer to North Carolina.

Since the First Circuit has instructed that forum selection clauses should figure "centrally" in the venue calculus, <u>Astro-Med</u>, supra at *8, any analysis of the venue issue must start with the parties' intent expressed in their pre-litigation agreements.  It is undisputed that Defendant Oakboro signed a contract containing a broad, but permissive, forum selection clause consenting to "the non-exclusive jurisdiction of Rhode Island courts in connection with the resolution of <u>any</u> disputes concerning the matters contemplated herein."  (Document No. 1-2) (emphasis added).  The Guaranty in issue contains similar language.  (Document No. 1-3). Defendant Thomas signed both contracts.  Given the nature of his business and the terms of the loan documents, Defendant Thomas knew, or reasonably should have known, that it was highly unlikely that Rhode Island would have anything to do with any future dispute between the parties.  Yet, by signing these documents, Defendant Thompson, for himself and as the principal of Defendant Oakboro, agreed that TFC would have the contractual right to sue him in Rhode Island and that Rhode Island law would govern any such dispute.

Considering the totality of the circumstances, the § 1404(a) factors weigh in favor of keeping this case in the District of Rhode Island.  TFC's position is supported by the existence of the Rhode Island forum selection clause and the presumption in favor of its choice of forum as Plaintiff.  Further, although not generally considered an "important factor," <u>Atlas Oil Co.</u>, 2009 WL 411763, the loan documents at issue in this case (and the other related pending cases) contain a Rhode Island choice of law provision and this District is, of course, an appropriate

forum to apply Rhode Island law.  See Travelodge Hotels, Inc. v. Mangat Houston Race Track, LLC, No. 2:06-CV-03543-JAG, 2007 WL 2156367 (D.N.J. July 25, 2007).  As for convenience of the parties, TFC has chosen Rhode Island as its preferred forum and, by signing loan documents designating this forum as a permissible forum, Defendants effectively bargained away the ability to validly assert their own inconvenience as a reason for transfer.  See Stateline Power Corp. v. Kremer, 404 F. Supp. 2d 1373, 1380-1381 (S.D. Fla. 2005) (Although not dispositive, a permissive forum selection clause suggests that, at the time of signing the contract, the parties did not consider the possibility of litigating in the designated state to be impermissibly inconvenient.).  Moreover, while Rhode Island has a public interest in providing a forum for a resident corporation to enforce a loan agreement, North Carolina has an equivalent public interest in providing a forum for a resident borrower alleging fraud.  Thus, these public interests are a wash and do not weigh in favor of either side.

Defendants have presented valid concerns as to the lack of any direct nexus between Rhode Island and the operative facts, and the inconvenience of a Rhode Island trial to out-of-state, non-party witnesses.  While it is true that Defendants would likely not have compulsory process over many of such witnesses for purposes of trial, compulsory process is available to Defendants in Georgia, North Carolina and elsewhere, to depose such witnesses and preserve the testimony of those unwilling or unable to travel to Rhode Island for trial.  Furthermore, although Defendants identified approximately twenty potential North Carolina witnesses in their Rule 26 Initial Disclosures dated July 22, 2009, they identified a total of approximately two hundred potential witnesses residing in many different states including Florida, New York and

Texas.  See Document No. 15-6.  Thus, Defendants' argument primarily focuses on their own inconvenience and displeasure with Rhode Island as a forum rather than the inconvenience of third-party witnesses.  However, when they signed the loan documents permitting TFC to initiate suit in this venue, Defendants essentially lost the right to complain about that trial burden.

Although this Motion presents a close call, the balance tilts slightly in favor of TFC due to the existence of the presumption in favor of TFC's choice of forum as the Plaintiff and giving due consideration to the parties' contractual forum selection clause.  Accordingly, Defendants have not met their burden of establishing that the §1404(a) factors, on balance, overcome those considerations and mandate transfer of this case to North Carolina.  For these reasons, Defendants' Motion to Transfer Venue (Document No. 14) is DENIED.


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 18, 2010