UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TEXTRON FINANCIAL CORP. | : | |
| | : | |
| v. | : | C.A. No. 09-085S |
| | : | |
| OAKBORO TRACTOR & | : | |
| EQUIPMENT, INC. and JOEL | : | |
| THOMAS | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This is one of nine (9) cases filed in this Court in February 2009 by Plaintiff Textron Financial Corporation ("Plaintiff" or "TFC") against out-of-state farm tractor dealers alleging that they, and their guarantors, if applicable, were in default of their payment obligations under certain inventory financing agreements known as Wholesale Security Agreements[1] (the "Agreements"). Defendants, in this particular case, are Oakboro Tractor & Equipment, Inc. of Oakboro, North Carolina the alleged defaulting entity, and its principal Mr. Joel Thomas of Peachland, North Carolina, the guarantor.

Defendants answered on April 6, 2009 and asserted a multi-count counterclaim against TFC, pursuant to Fed. R. Civ. P. 13, alleging that TFC and Farmtrac, North America of Tarboro, North Carolina, a farm tractor manufacturer, engaged in a conspiracy to "dump" tractor inventory on its dealers such as Oakboro and thus effectively transferred debt from Farmtrac to the dealers. (Document No. 8). Defendants contend that TFC also extended credit to Farmtrac and benefitted

---

[1] All of these cases have been administratively assigned to District Judge Smith based on a finding by the District Judges that they are related. (Document No. 12). The cases involve the same basic loan documents and almost all of them present the same basic counterclaims asserted by the borrowers.

from the inventory dumping because Farmtrac was in "financial distress" and could not repay its loans to TFC. Id. Farmtrac ceased operations in early 2008.

On May 14, 2010, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction Enjoining Alienation of Collateral. (Document No. 31). Defendants oppose the Motion. (Document No. 34). Plaintiff's Motion has been referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B); LR Cv 72. A hearing was held on July 23, 2010. For the following reasons, I recommend that Plaintiff's Motion be GRANTED in part and DENIED in part as specified herein.

**Discussion**

Plaintiff seeks an Order that (1) conditions the future sale of collateral by Defendants on depositing the proceeds in escrow; and (2) requires Defendants to deposit in escrow the proceeds of all previously sold collateral. Defendants counter that such an Order is inappropriate because the sole relief sought by Plaintiff in its Complaint is money damages, and, thus, it has an adequate remedy at law. Further, Defendants question whether this Court has jurisdiction over the collateral or sales proceeds in question. Defendants also note the lack of urgency necessary to justify injunctive relief since this case was filed in February 2009, and Defendants have been selling the collateral (primarily tractors) in which Plaintiff claims to have a security interest for more than one year without any effort made by Plaintiff to enjoin such sales.

In order to obtain a preliminary injunction, the moving party bears the burden of showing that: (1) it will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting injunctive relief would inflict on the nonmovant; (3) it has a likelihood of success on the merits; and (4) the public interest will not be adversely affected by the granting of

the injunction. See Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); and Hasbro, Inc. v. MGA Entm't, Inc., 497 F. Supp. 2d 337, 340 (D.R.I. 2007). "The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." CMM Cable Rep., Inc. v. Ocean Coast Prop., Inc., 48 F.3d 618, 620 (1st Cir. 1995).

The following facts are undisputed. On June 4, 2001, Defendant Thomas, in his capacity as President of Oakboro Tractor & Equipment, Inc., executed a Finance Plan and Wholesale Security Agreement with Plaintiff. (Schenck Aff., Exs. 1 and 2; Document No. 31-1 at 1-13). Pursuant to the Agreement, Oakboro granted a security interest to Plaintiff in certain collateral, including financed farm tractors, as well as the proceeds from the sale of such collateral. Id. The Agreement authorizes Oakboro, i.e., the "Debtor," to sell the collateral in the ordinary course of its business provided that: "(a) Debtor is not in default hereunder, (b) the price obtained for such item of Collateral is not less than the unpaid Total Debt attributable thereto, and (c) Debtor holds all of the proceeds of any such sale in trust for, and promptly remits the unpaid Invoice Cost of such item of Collateral to, Secured Party [, i.e., Plaintiff]." Id. at 10.

Plaintiff avers that it has financed Oakboro's purchase of fifty-six items of collateral for which it has not yet been paid. (Schenck Aff., ¶ 8 and Ex. 4; Document No. 31-1 at 18-20). Plaintiff also avers that its field audits have revealed, as of April 26, 2010, that thirty-four of the fifty-six items are not located on Oakboro's property and thus have been categorized as "sold and unpaid." Id., ¶ 10; Document No. 31-1 at 4. Oakboro does not directly dispute that it received the fifty-six items of collateral and sold thirty-four. Rather, consistent with the inventory dumping allegation in its counterclaims, Oakboro asserts that Plaintiff "knowingly charged dealer accounts for

equipment that was not ordered and charged dealer accounts for equipment that was not ready for shipment." (Document No. 34 at 4).  Specifically, Defendant Thomas testifies in his Affidavit that "[n]o one at Oakboro Tractor ordered...[or] purchased any of the Farmtrac equipment for which Oakboro Tractor and I have been sued." (Document No. 34-1 at ¶ 14). He also indicates that he was told by a Farmtrac territory manager that "Oakboro Tractor would have no financial obligations for Farmtrac equipment that Oakboro Tractor did not order <u>unless</u> Oakboro Tractor sold the equipment." Id. at ¶ 10 (emphasis added). Finally, Defendants' counsel stated at the hearing on this Motion that his "client is selling the Farmtrac equipment to mitigate his damages."

Although there are factual disputes regarding the history and operation of the inventory financing arrangement between Plaintiff and Defendants, it is undisputed that Oakboro does not own the tractors in question free and clear. Based on the record before me, Oakboro either purchased the tractors subject to Plaintiff's security interest or did not purchase the tractors and has no property right in them.[2] This conclusion is consistent with Defendant Thomas' Declaration dated November 25, 2009 (Document No. 16-1 at pp. 2-3) in which he testified that he opened an escrow account for the "sole purpose of receiving proceeds for sales of equipment that [Plaintiff] lists on monthly statements sent to Oakboro" and that "Oakboro has deposited funds into the escrow for each of the five pieces of equipment...that has been sold since this case was filed." He also testified that he

---

[2] In their Objection, Defendants argue that Plaintiff "abandoned" any claim to its "alleged collateral" because its Complaint only sought money damages and not the return of collateral. (Document No. 34 at 3). Defendants do not, however, provide any legal support for this abandonment claim, and it contradicts the express terms of the Agreement attached as Exhibit 1 to Plaintiff's Complaint which Defendants admit is a true copy of the document it purports to be. (Document No. 8, ¶¶ 5, 7, 9 and 10).

offered to provide a bank statement to a representative of Plaintiff showing "the proceeds that are being held in trust." Id. at 2.[3]

Plaintiff seeks two distinct remedies. First, Plaintiff seeks an Order requiring Defendants to deposit the proceeds of previously-sold collateral into escrow. This is commonly known as a mandatory injunction, i.e., one which orders or mandates a party to take some affirmative action. See, e.g., Francisco Sanchez v. Esso Standard Oil Co., 572 F.3d 1, 20-21 (1st Cir. 2009). Second, Plaintiff seeks an Order prohibiting Defendants from alienating collateral in the future unless they deposit the proceeds in escrow. This is commonly known as a prohibitory injunction, i.e., one which restricts a party from taking some affirmative action. Id.

With the former request for a mandatory injunction, Plaintiff seeks to restore its status as a secured party by requiring Defendants to put an amount equal to the proceeds of prior collateral sales into escrow. With the latter request for a prohibitory injunction, Plaintiff seeks to protect its status as a secured party by conditioning the future sale of collateral on depositing the proceeds into escrow. In other words, Plaintiff seeks to both restore and maintain the status quo. While the former is generally the function of preliminary injunctive relief, see CMM Cable Rep., 48 F.3d at 620 ("purpose of a preliminary injunction is to preserve the status quo"), the appropriateness of the latter purpose, i.e., restoring the status quo, under Fed. R. Civ. P. 65 is less clear.

### A.     Mandatory Injunction

Plaintiff seeks an Order requiring Defendants to deposit the proceeds of previously-sold collateral into escrow. In effect, Plaintiff asks the Court to Order Defendants to deposit a sum of

---

[3] This Declaration was submitted by Defendants, in the context of their request to transfer venue, in response to a claim by Plaintiff that Defendants were "out of trust" because of the failure to remit payment and/or hold proceeds in escrow after selling collateral. (Document No. 16 at 3).

money into escrow to secure satisfaction of the judgment it seeks against Defendants. For the reasons summarized below, I do not find this to be an appropriate basis for injunctive relief under Fed. R. Civ. P. 65 on these particular facts.

Defendants argue that Plaintiff's request for a mandatory injunction is "a Rule 64 motion for prejudgment attachment disguised as a Rule 65 motion for an injunction." (Document No. 34 at 5). In reply, Plaintiff counters that "what [it] seeks is an injunction restricting Defendants' actions, not an attachment." (Document No. 37 at 3). Plaintiff's argument, however, is contradicted by the relief it requests. As to the mandatory injunction, Plaintiff's Motion requests an Order that "requires Defendants to deposit all proceeds of previously-sold collateral of [Plaintiff] into...escrow...." (Document No. 31 at 1). That is not "an injunction restricting Defendants' actions" as argued by Plaintiff. It is plainly a request for an order requiring Defendants to affirmatively deposit a sum of money into escrow. It is not a request for prohibitory relief as argued.

In deciding whether a requested order is a Rule 65 injunction or a Rule 64 attachment, the First Circuit has instructed that the relevant factors include "the present and future consequences of the constraint involved; whether the order directs or restrains conduct of one of the parties; [and] how the order was treated...by the...court and the parties." Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 156-157 (1st Cir. 2004) (quoting Terodyne, Inc. v. Mostek Corp., 797 F.2d 43, 47 (1st Cir. 1986)). Here, the requested relief plainly directs future conduct by one of the parties, and it is not directed at any specifically identifiable property. Rather, the practical consequence of the relief requested would require Defendants[4] to account for the proceeds of any collateral sold and

---

[4] Plaintiff seeks its mandatory injunction jointly against Defendants but makes no attempt to differentiate their potential liability/responsibility in this case as debtor versus guarantor. Further, there is no claim that Defendant Thomas personally has taken possession of the collateral or any sales proceeds.

to make a general deposit of equivalent funds into escrow. As such, the mandatory injunction requested by Plaintiff is more akin to a Rule 64 prejudgment attachment of money than a Rule 65 preliminary injunction to maintain the status quo.

Under Fed. R. Civ. P. 64, a party is entitled to utilize available state law remedies for seizing property to secure satisfaction of a potential judgment. Since Plaintiff's requested relief as to previously-sold collateral would require a deposit of money into escrow, it is a seizure of property for all practical purposes. Plaintiff knew when it commenced this action in early 2009 that Defendant Oakboro had an inventory of claimed collateral but did not include any claim for replevin or foreclosure in its Complaint. Presumably, Plaintiff did not want possession of the collateral because it is not in the farm equipment business, and the best opportunity for sale was with a farm tractor dealer such as Defendant Oakboro. Plaintiff also should have known that Defendant Oakboro would try to sell the collateral on its lot and, in a filing dated November 20, 2009, Plaintiff specifically alleged that "Oakboro has sold and/or otherwise alienated several pieces of Collateral for which it has refused to make any of the required payments to [Plaintiff]." (Document No. 15 at 7). Despite this knowledge, Plaintiff took no action to secure its collateral until the instant Motion was filed on May 14, 2010. Now, Plaintiff, under the auspices of Rule 65, seeks an injunction which effectively seeks to unscramble the eggs and obligate Defendants jointly to deposit the proceeds of prior sales into escrow. Plaintiff has simply not shown that the Court has such authority under Rule 65 based on these facts and circumstances. Thus, Plaintiff's request for a mandatory injunction should be denied.

**B.**     **Prohibitory Injunction**

For the reasons summarized below, I find that Plaintiff has made a sufficient showing to justify the issuance of preliminary injunctive relief under Fed. R. Civ. P. 65 which enjoins Defendants from alienating collateral unless the proceeds are deposited into escrow.[5]  In particular, I conclude that: (1) Plaintiff has a substantial likelihood of prevailing on its claimed security interest in the collateral; (2) Plaintiff will suffer irreparable injury if Defendants continue to sell Plaintiff's collateral without securing the proceeds; (3) the potential injury to Plaintiff outweighs any damage which the proposed injunction may cause to Defendants; and (4) the proposed injunction will not adversely affect any public interest.

### 1.     Likelihood of Success

Although Plaintiff's Complaint does not contain a claim of replevin seeking to repossess the collateral, the Complaint does assert that, pursuant to the Agreement between Plaintiff and Defendant Oakboro, Plaintiff financed Oakboro's inventory and that "Oakboro is obligated to pay to [Plaintiff] the original invoice costs of each item of inventory and/or collateral financed...for Oakboro by [Plaintiff]." (Document No. 1, ¶¶ 7, 9). Also, a true and signed copy of the Agreement is attached to the Complaint as Exhibit 1 and incorporated by reference. Id., ¶ 5 and Ex. 1. The Agreement unambiguously and undisputedly defines Plaintiff as a "secured party" and grants it a "security interest" in the collateral. Id., Ex. 1 at ¶ 1. It also conditions the sale of collateral by

---

[5] Rule 65(c) provides that a successful applicant for an injunction must give security in an amount that the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined. Neither side has addressed this issue of a Rule 65(c) bond in their submissions and, given the Court's conclusion as to Plaintiff's limited ownership interest, if any, in the collateral, the Court does not envision the potential for damages which would necessitate a bond. See Int'l Ass'n of Machinists and Aerospace Workers v. Eastern Airlines, 925 F.2d 6, 9 (1st Cir. 1991) (finding "ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond").

Defendant Oakboro on certain conditions including holding the proceeds "in trust for" the repayment of Plaintiff. Id., Ex. 1 at ¶ 7.

As discussed above, although there are factual disputes regarding the history and operation of this inventory financing arrangement, it is undisputed that Oakboro does not own the collateral in question free and clear. Defendants offer no evidence establishing or even suggesting that they have such an ownership interest. Based on the current record, Oakboro either purchased the collateral under the inventory financing agreement and thus is subject to Plaintiff's security interest, or it did not order/purchase the alleged collateral and thus has no ownership interest in it.

Defendants argue that Oakboro did not purchase the alleged collateral but claim the unfettered right to sell the collateral to "mitigate...damages." Defendants cannot have it both ways. The Agreement expressly and unambiguously grants a security interest in the financed inventory to Plaintiff and requires that sale proceeds be held in trust for Plaintiff's benefit. Thus, Plaintiff has sufficiently shown a likelihood of success on establishing a security interest in the collateral. See Textron Fin. Corp. v. Unique Marine, Inc., No. 08-10082-CIV, 2008 WL 4716965 at *8 (S.D. Fla. Oct. 22, 2008) (finding likelihood of success based on debtor's alleged failure to hold proceeds of sale of collateral in trust which breached credit agreement "vested" security interest).

**2.   Irreparable Injury**

Defendants argue that Plaintiff, by its pleadings, admits that it has an adequate remedy at law, i.e., money damages. In particular, Defendants point out that Plaintiff's Complaint only seeks monetary relief and does not seek any equitable remedies as to the claimed collateral such as replevin, attachment or foreclosure. Plaintiff counters that its loss of the security of collateral –

separate and apart from its pure money damages – constitutes irreparable harm.  I agree with Plaintiff.

Generally, an injury is not irreparable if it can be compensated by money damages.  See Cattle Fin. Co. v. Boedery, Inc., 795 F. Supp. 362, 364 (D. Kan. 1992).  However, a finding of irreparable harm may be based on a "strong indication" that a debtor is alienating secured collateral. See Micro Signal Research, Inc. v. Otus, 417 F.3d 28, 31 (1st Cir. 2005); and Roswell Capital Partners LLC v. Alt. Constr. Tech., No. 08-CV-10647 (DLC), 2009 WL 222348 at *17 (S.D.N.Y. Jan. 30, 2009).

In this case, Defendants have admittedly been selling Plaintiff's alleged collateral for quite some time.  (Document No. 34 at 4).  Although Defendant Thomas indicated in his November 25, 1999 Declaration that he opened an escrow account for such sales proceeds and had made deposits for five pieces of equipment (Document No. 16-1), Defendants' counsel indicated that the Declaration was a true statement when made but was "not an indication of future intent" to do so. Thus, it is reasonable to conclude that subsequent proceeds have not gone into escrow, and Defendants' disregard of Plaintiff's security interest constitutes irreparable injury.  See Unique Marine, 2008 WL 4716965 at *8 (finding irreparable injury due to existence of a "significant risk that [debtor] will continue to liquidate the assets that constitute the Collateral owed to Textron and, for all practical purposes, frustrate Textron's rights to collect the Collateral under the terms of the Credit Agreement").

### 3.     Balancing the Harm

At the hearing, Defendants' counsel indicated that "my client is selling the Farmtrac equipment to mitigate his damages."  While a party generally has an affirmative obligation to

mitigate its damages, it may not do so by selling another's property. As noted above, Defendants concede that they are selling Plaintiff's alleged collateral but do not offer any evidence that they own the collateral. Defendants' primary argument is that Plaintiff fraudulently charged them for equipment they never ordered or purchased but which was shipped to, i.e., dumped on, them. Defendant Oakboro contends that it has been excused from any further obligations to Plaintiff and is entitled to damages arising out of Plaintiff's wrongful conduct. While Defendants may ultimately prevail on their counterclaims, such counterclaims are not directly before the Court on this Motion and, in any event, do not entitle Defendants to secure prejudgment relief by selling equipment they claim they never purchased. Such equipment is either collateral under the terms of the Agreement or it is the property of an entity other than Defendants. Plaintiff's request for a prohibitory injunction simply seeks to prevent Defendants from selling Plaintiff's alleged collateral in the future without depositing the proceeds into escrow. The potential injury to Plaintiff's secured party status outweighs any potential injury to Defendants caused by the requested prohibitory injunction.

### 4.   Public Interest

This private, contractual dispute does not significantly impact the public interest in either direction. Neither side has made a strong showing that granting or denying the prohibitory injunction sought by Plaintiff would adversely affect the public interest in any way. Thus, this is not a dispositive factor.

### CONCLUSION

For the foregoing reasons, I recommend that Plaintiff's Motion to Enjoin Alienation of Collateral be GRANTED in part and DENIED in part as specified herein. Plaintiff shall submit a

proposed Form of Order, consistent with this recommendation, to Judge Smith for his consideration within fourteen (14) days.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. <u>See</u> Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 26, 2010